# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| WENDELL PAYNE, CHRIS RIDDLE, AND XCURSION MARKETING GROUP, L.L.C. | CIVIL ACTION<br><br>NO. 13-679-JJB-RLB |
| VERSUS | |
| FOREST RIVER, INC. | |

## ORDER

Before the court is Plaintiffs' Motion to Compel (R. Doc. 48) filed on March 6, 2015. (R. Doc. 48). Defendant Forest River, Inc. ("Forest River") has filed an Opposition under seal. (R. Doc. 52). Plaintiffs have filed a Reply under seal. (R. Doc. 53). For the following reasons, Plaintiffs' Motion to Compel is **GRANTED in part and DENIED in part**.[1]

**I.    Background**

The parties to this action dispute the ownership of the design and specifications of certain pontoon boats and whether they entered into a joint venture regarding the production and sale of those pontoon boats. In their Petition, Plaintiffs allege that in January 2011 they perfected the design of the "Xcursion" series pontoon boats, which they allege is "unique in the pontoon boating market because of [Plaintiffs'] invention and innovation, including higher end finishes for the product as well as a more functional and customer-friendly design." (R. Doc. 1-1, "Petition," ¶¶ 2-3). Plaintiffs allege that they then entered into a joint venture agreement with Forest River by which "Forest River would acquire the rights to Xcursion and [Plaintiffs] would market Xcursion and, in exchange, Forest River would pay [Plaintiffs] 4% of the gross sales of Xcursion." (Petition, ¶ 4). Plaintiffs further allege that in May 2011, Forest River began

---

[1] Although this Order discusses briefs and documents filed under seal, it does not reveal any trade secrets or otherwise confidential information, or otherwise disclose the related contents of any such documents.

manufacturing the Xcursion series pontoon boats using Plaintiffs' "designs, specifications, and plans for the Xcursion concept." (Petition, ¶ 5). Plaintiffs allege that after a series of attempted modifications to their joint venture agreement, Forest River breached the agreement by ceasing to pay Plaintiffs in August of 2012. (Petition, ¶¶ 7-11).

Forest River denies that a joint venture agreement exists between the parties. (R. Doc. 14 at 4). If, however, the Court determines that a joint venture between the parties does exist, Forest River seeks to recover net losses for the manufacture and sale of Xcursion series pontoon boats. (R. Doc. 14 at 4-5). In addition to the Xcursion line of pontoon boats, Forest River markets and sells a South Bay and Berkshire line of pontoon boats.

The instant discovery dispute concerns three requests for production propounded by Plaintiffs. The first two requests for production at issue—Plaintiffs' First Set of Discovery Requests Nos. 2 and 3—respectively seek the production of certain "purchase programs" and "commitment sheets" regarding all three pontoon boat lines produced by Forest River (Xcursion, South Bay, and Berkshire) for the years 2011 through 2014. The third request for production at issue—Plaintiffs' Second Set of Discovery Requests No. 1—seeks the production of financial statements, sales projections, profit and loss statements, and income statements regarding the Xcursion line of pontoon boats from 2011 to the present. Plaintiffs allege that Forest River's responses to these requests for production are incomplete.

Plaintiffs' counsel has certified to the court that counsel have conferred and attempted to resolve the issues in the Motion to Compel in good faith but have been unable to do so. Plaintiffs seek an order requiring Forest River to fully answer the foregoing requests for production and awarding Plaintiffs their reasonable expenses, including attorney's fees, incurred in connection with bringing the motion.

**II.	Law and Analysis**

**A.	Legal Standards**

Rule 26(b)(1) of the Federal Rule of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." To be relevant, "information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The scope of discovery is not without limits, however, and the court may protect a party from responding to discovery when: (i) it is unreasonably cumulative or duplicative, or obtainable from some other less-burdensome source; (ii) the party seeking discovery has had the opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

Rule 34 provides a party with 30 days after service of requests for production to respond or object. *See* Fed. R. Civ. P. 34(b)(2)(A). If a party fails to respond timely or fully to requests for production, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

### B. Plaintiffs' First Set of Discovery Requests – Purchase Programs and Commitment Sheets

#### 1. Forest River's Productions

On May 5, 2014, Plaintiffs requested Forest River to produce "purchase programs" and "commitment sheets" for all three lines of its pontoon boats for the years 2011-12. (R. Doc. 48-2 at 8).[2] The terms "purchase programs" and "commitment sheets" are not defined in Plaintiffs' discovery requests. On June 9, 2014, Forest River objected to these requests as "vague, overly broad and unduly burdensome" and objected to the production of documents related to the South Bay and Berkshire product lines on the basis of relevance. (R. Doc. 48-2 at 11-13). Forest River stated, however, that it would produce documents regarding the Xcursion product line once a protective order was in place. (R. Doc. 48-2 at 11-13).

On June 18, 2014, the day after the court entered a Protective Order governing the production confidential documents (R. Doc. 16), Forest River supplemented its responses to Request for Production No. 2 by producing 4 pages of documents. (R. Doc. 48-2 at 15).[3] Two of these documents include purchase program information regarding the Xcursion line for the years 2011 and 2012. The remaining two documents contain purchase program information for all three lines of pontoon boats (Xcursion, South Bay, and Berkshire) for the years 2013 and 2014 without a breakdown of the purchase program information by specific product line. (R. Doc. 48 at 2; R. Doc. 52 at 2-3). Forest River asserts that despite the different titles that may have been used for these documents, their content is essentially the same and they provide all the information regarding the purchasing programs for the respective product lines on the dates provided. (R. Doc. 52 at 4).

---

[2] Plaintiffs originally requested the "commitment sheets" for all brands of boats distributed by Forest River, but subsequently limited the request to Forest River's three lines of pontoon boats. (R. Doc. 48-2 at 23).
[3] These documents are Bates numbered Forest River/Xcursion-00002 through 00005.

4

The same day, Forest River also supplemented its responses to Request for Production No. 3 by producing just over 20 pages of documents. (R. Doc. 48-2 at 16).[4] According to Plaintiffs, this supplemental production only includes "2014 fall stocking commitment sheets from dealers" with no breakdown of commitments for each product lines. (R. Doc. 48 at 3). In Opposition, Forest River states that this production included "Xcursion-related Dealer Commitment Sheets for the July 2013-December 2013 and January 2014-June 2014 time periods." (R. Doc. 52 at 6). Forest River represents that during that time period its "commitment sheets did not require that dealers specify which pontoon product line they wanted to purchase, and instead simply referred to a certain number of boats and motors without respect to the product line." (R. Doc. 52 at 7).

On November 12, 2014, Forest River further supplemented its responses to Request for Production No. 2 by producing an additional 4 pages of documents. (R. Doc. 48-2 at 20).[5] According to Forest River, these "Dealer Fall Stocking Commitment" documents include information regarding purchase programs for Berkshire and South Bay for the years 2011 and 2012. (R. Doc. 52 at 3). Forest River did not supplement its responses to Request for Production No. 3 at that time.

On March 26, 2015, after Plaintiffs filed the instant Motion, Forest River produced additional dealer commitment sheets related to the Berkshire and South Bay product lines while retaining its objection regarding the relevance of documents involving those product lines. (R. Doc. 52 at 7-8).[6] Forest River represents that it has now produced all dealer commitment sheets for all three pontoon boat lines for the years 2011, 2012, and 2014. (R. Doc. 52 at 8). Forest River further represents that despite "a diligent search" it "cannot locate dealer commitment

---

[4] These documents are Bates numbered Forest River/Xcursion-00006 through 00027.
[5] These documents are Bates numbered Forest River/Xcursion-00028 through 00031.
[6] These documents are Bates numbered Forest River/Xcursion 001303 to 001380, and 001381 to 001506.

5

sheets for the 2013 time frame and believes that they were discarded in the ordinary course of business." (R. Doc. 52 at 8).

In their Reply, Plaintiffs assert that Forest River's responses to Request for Production Nos. 2 and 3 remain deficient because Forest River has not produced "purchase programs" for 2011 and "dealer commitment sheets" for 2013. (R. Doc. 53 at 5). Plaintiffs now define the term "purchase program" as programs that "offer dealers financial incentives and/or discounts based on volume, financing, and motor orders [that] lists out these discounts and special offers." (R. Doc. 53 at 2). Plaintiffs base this definition on documents produced by Forest River in response to Request for Production No. 2 titled "Forest River Marine . . . Confidential Purchasing Programs."[7] Plaintiffs also offer the definition of the term "commitment sheets" as documents that "include, among other things, the stocking order quantity for each dealer, the delivery schedule, the dealer's name and contact information, and a Forest River Marine authorization signature." (R. Doc. 53 at 2). Plaintiffs base this definition on documents produced by Forest River in response to Request for Production No. 3 titled "Forest River Marine Confidential 2014 Fall Stocking Commitment."[8]

### 2. Whether Forest River has produced all responsive "purchase programs"

The dispute regarding whether Forest River has produced all "purchase programs" is centered on the ambiguity of the undefined term "purchase programs" in Request for Production No. 2. The court sustains Forest River's objection to this language as vague. Forest River represents that to the extent Request for Production No. 2 "seeks a written description of its overall plan for selling pontoon boats to its dealers" it has produced all responsive documents.

---

[7] Plaintiffs have filed these documents under seal. (R. Doc. 53-1 at 1-3). These documents are Bates numbered Forest River/Xcursion 00004, 00030, and 00031.
[8] Plaintiffs have filed these documents under seal. (R. Doc. 53-1 at 4-5). These documents are Bates numbered Forest River/Xcursion 00009, 00013, 00021, and 00027.

(R. Doc. 52 at 2 n.3). Forest River represents that it maintained separate purchase programs for each line of pontoon boats for the years 2011 and 2012, but it combined the purchase program information in 2013 and 2014. (R. Doc. 52 at 3).

Accordingly, Forest River argues that despite the fact that certain purchase programs were titled "Dealer Fall Stocking Commitment," those documents are in fact representative of purchase programs. Plaintiffs disagree. Plaintiffs argue that these documents, which were produced in response to Request for Production No. 2, are actually "commitment sheets" (as the titles suggest) responsive to Request for Production No. 3. (R. Doc. 53 at 2). Plaintiffs point out that Forest River has produced "Fall Stocking Commitment" documents for 2014 in response to the request for "commitment sheets." (R. Doc. 53 at 2).

To the extent Plaintiffs seek an order from this court compelling the production of documents that Forest River asserts it has provided, Plaintiffs' request is denied. Based on the record, however, the court will require Forest River to conduct another search and determine whether it has any additional documents in its custody, possession, or control responsive to Request for Production No. 2. The term "purchase program" as found in the request shall be defined as any documents that "offer dealers financial incentives and/or discounts based on volume, financing, and motor orders that lists out these discounts and special offers." Forest River must produce all documents for the 2011 period (regardless of how the documents are titled) containing information similar to the "purchasing program" documents it has produced for the years 2012, 2013, and 2014. If Forest River cannot locate any additional documents after a diligent search, it shall notify Plaintiffs that no additional documents have been located.

### 3. Whether Forest River has produced all responsive "commitment sheets"

With regard to Request for Production No. 3, Forest River does not dispute that it has not provided "dealer commitment sheets" for 2013. Forest River plainly admits that any "dealer commitment sheets" for 2013 were likely discarded in the ordinary course of business. The court cannot order the production of documents that no longer exist or, despite a diligent search, cannot be found in the possession, custody, or control of a party.[9]

The court recognizes, however, that Forest River produced commitment sheets regarding Berkshire and South Bay only after Plaintiffs moved to compel production. Plaintiffs argue that these commitment sheets are relevant "to the claims and defenses in this case, including the claims of unfair trade practices, alleged loss of profitability, and the counterclaim of offset" and "will provide evidence that will provide a link to the overall price and income on each line of boat as well as the actions and inactions related to trade practices." (R. Doc. 48-1 at 6). Forest River maintains that these documents are irrelevant because Plaintiffs have not alleged that "Forest River provided unfair discounts to dealers." (R. Doc. 52 at 7-8). Notwithstanding that position, Forest River produced the documents in an effort to resolve any issue without court intervention. Plaintiff replies by arguing that these "forms are relevant to the claims in this lawsuit as the commitment sheets reflect the discounts offered, whether there were any special

---

[9] In a post-Motion deposition taken on March 19, 2015, Mr. Thomas McCuddy, General Manager for Forest River Marine, testified that fall stocking commitments were maintained by the sales coordinators that handled the dealers and that he knew that 2013 fall stocking commitment sheets were created, but did not know if they had been destroyed or still exist today. (R. Doc. 53-1 at 13-14). Through their Reply, Plaintiffs argue that any 2013 fall commitments would have been created after service of the instant lawsuit on April 19, 2013. Plaintiffs provide no support for this assertion. A review of the dates of the 2014 fall commitments provided to the court seem to support a contrary conclusion - that these commitments would have been created in the prior year or at the very beginning of the referenced year. Also in the Reply, Plaintiffs request that "an adverse inference instruction should be imposed as a sanction against Defendant such that the jury is to presume that destroyed evidence, if produced, would have been adverse to that party that destroyed it." (R. Doc. 53 at 5). This request for an evidentiary ruling / jury instruction was first raised in the Reply, goes beyond any discovery related relief set forth in the instant motion, and is not proper for consideration in this Order or by this court.

discounts, and whether there were any agreements by Forest River to not impose a price increase on a particular dealer." (R. Doc. 53 at 3).

The court agrees with Plaintiffs that dealer commitment sheets regarding the Berkshire and South Bay product lines may demonstrate whether the Xcursion product line was losing profitability and whether Forest River was encouraging dealers, through special discounts and incentives, to purchase from the South Bay or Berkshire product line instead of the Xcursion product line. Although untimely, Forest River appropriately produced the requested documents.

### C. Plaintiffs' Second Set of Discovery Requests – Financial Statements, Sales Projections, Profit and Loss Statements, and Income Statements

On December 17, 2014, Plaintiffs propounded a Second Set of Discovery Requests on Forest River. (R. Doc. 48-2 at 24-33). Request for Production No. 1 asked for "any and all financial statements, sales projections, profit and loss statements and income statements regarding the Xcursion pontoon boat from 2011 to current." (R. Doc. 48-2 at 31). Plaintiffs assert in their Motion that Forest River did not "product sales projections and all financial statements, aside from P/L and income, regarding the Xcursion pontoon for 2011 to 2013." (R. Doc. 48 at 4). Plaintiffs do not discuss, however, Forest River's responses to the request.

In its Opposition, Forest River represents that it produced documents on June 18, 2014 (August 2013-May 2014 "gross sales"); January 16, 2015 (2011-2012 "allocation of expenses"; 2011-2012 profit and loss statements), and March 5, 2015 (2013-2014 profit and loss statements). (R. Doc. 52 at 9). Forest River further represents that Plaintiffs have produced "accounting records showing Xcursion sales from August 2012 through August 2013, along with detailed listings of Xcursion pontoon boat sales and pricing for August 2011 through June 2012." (R. Doc. 52 at 9). Forest River further states that in its post-Motion production on March 26, 2015, it produced the only "single one-page sales projection that related to the Xcursion pontoon

9

boat"[10] and would have produced this document earlier but it was inadvertently overlooked because it did not contain the term "Xcursion." (R. Doc. 52 at 10-11).[11]

Forest River argues that Plaintiffs have failed to demonstrate how any additional financial records are discoverable. Forest River argues that "financial records showing information concerning manufacturing expenses, labor costs and overheard expenses" are irrelevant to a calculation of Plaintiff's damages, which are based on "gross" revenue. (R. Doc. 52 at 10). Forest River further argues that even if a joint venture existed between the parties, the losses alleged by Forest River related to the joint venture took place in 2011 and 2012 and, therefore, documents for later years would be irrelevant. (R. Doc. 52 at 10). Plaintiffs argue in reply that they are entitled to post-2012 commissions on gross sales, and that post-2012 financial statements are relevant to Forest River's contention "that the Xcursion pontoon boat was losing profitability." (R. Doc. 53 at 5).

The court agrees with Plaintiffs that post-2012 financial statements are relevant to the claims and defenses in this litigation. Such documents appear to be "reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1), regarding Forest River's allegation that the Xcursion boat line (which is still in production) has been losing profitability. The court therefore orders Forest River to provide all financial statements—whether monthly, annual, or otherwise—regarding the Xcursion pontoon from 2011 to the present.[12]

With regard to Forest River's sales projections, Plaintiffs assert that additional sales projections may exist based on deposition testimony that relied on "projected information . . . of sales and unit volume" in reaching a conclusion regarding Xcursion's profitability potential in

---

[10] This document is Bates numbered Forest River/Xcursion 0001507.
[11] The court finds that ordering sanctions with regard to this post-Motion production would be unjust in light of Forest River's representation that its failure to product the document was inadvertent. *See* Fed. R. Civ. P. 37(a)(5)(A).
[12] In their Reply, Plaintiffs state that certain representatives of Forest River testified (after Plaintiffs filed their Motion) that financial statements were made on a monthly basis. (R. Doc. 53 at 6 (citing R. Doc. 53-1 at 19-21, 27)).

the 2013-2014 period. (R. Doc. 53 at 5-6) (quoting R. Doc. 53-1 at 11-12)). Forest River shall conduct an additional search to determine whether it can locate any specific projection referred to in that deposition and any other sales projections regarding the Xcursion product line. If Forest River cannot locate any additional sales projections after a diligent search, it shall notify Plaintiffs that no additional documents have been located.

   **D.  Expenses**

As set forth above, the Court has granted in part and denied in part certain portions of the instant Motion. The court has also noted that some of the disputes involved the vagueness and/or confusion regarding the terms "purchase programs" and "commitment sheets," and also that Forest River's failure to produce one single page document was inadvertent. Under Rule 37(a)(5)(C), if a motion to compel discovery is granted in part and denied in part, a court may apportion the reasonable expenses for the motion. In addition, payment of expenses shall not be ordered if any other circumstances would make such an award unjust.

Based on the foregoing, the court has determined that the parties shall each bear their own expenses in connection with the Motion.

**IV.  Conclusion**

**IT IS ORDERED** that Plaintiffs' Motion to Compel (R. Doc. 35) is **GRANTED IN PART AND DENIED IN PART** in accordance with this Order. The parties will bear their own expenses. **IT IS FURTHER ORDERED** that Forest River shall supplement its responses, as outlined in this Order, on or before **May 4, 2015**.

Signed in Baton Rouge, Louisiana, on April 22, 2015.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**